IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DARRIN HATFIELD and
DEBBIE HATFIELD                                                          PLAINTIFFS

V.                              CASE NO. 3:14-CV-03078

CHUCK STUBBS, individually and
in his official capacity as Animal
Control Officer of the City of
Berryville; and CITY OF BERRYVILLE                                       DEFENDANTS

<u>OPINION AND ORDER</u>

Currently before the Court are a Motion for Summary Judgment (Doc. 5) and brief

and exhibits in support (Doc. 6) filed by Defendants Chuck Stubbs and the City of Berryville

on August 13, 2014.  Plaintiffs Darrin and Debbie Hatfield ("the Hatfields") are represented

by counsel but failed to respond to the Motion.  More than two months have passed since

a response was due.  For the reasons explained herein, the Motion (Doc. 6) is **GRANTED**.

## I.  BACKGROUND

This case was originally filed in the Circuit Court of Carroll County, Arkansas.

Defendants removed the case pursuant to 28 U.S.C. § 1331, due to the existence of a

federal question as the Hatfields alleged violations of their constitutional rights pursuant

to 42 U.S.C. § 1983.  The Hatfields contend that Stubbs, an Animal Control Officer for the

City of Berryville, unlawfully shot, killed, and buried their two valuable, purebred German

Shepherds named Egon and Fritz.  The Amended Complaint explains that the dogs were

implanted with microchips containing identifying information; however, it is undisputed that

they were not wearing collars or external identifying tags during the events that are the subject of this lawsuit.

In the late evening of March 10 or early morning of March 11, 2013, Egon and Fritz escaped from their fenced back yard.  At approximately 6:00 a.m. on March 11, the Hatfields called Stubbs with Animal Control and reported that their dogs were running at large.  Then at approximately 7:30 to 8:00 a.m., an individual named Vaughn Farmer called Stubbs to report that two dogs were in his goat pen.  Farmer also admitted to Stubbs that he had shot at the dogs and might have hit one or both of them.  Although the Hatfields were not present to witness what occurred at Farmer's residence, they claim in the Amended Complaint that Fritz in particular "was not attacking or attempting to attack any animals or people . . . ."  (Doc. 3, p. 4).  They further claim that "Stubbs made no effort to catch Fritz or obtain any assistance from other city officers to help catch Fritz" before using a .22 caliber rifle "to repeatedly shoot at Fritz from outside the fence pen."  *Id.*  As for the other dog, Egon, the Hatfields admit that "it is unclear whether Egon was killed by Farmer, or by Stubbs."  *Id.*

After the dogs had been killed, the Hatfields allege—and Defendants do not deny—that Stubbs took the dogs' bodies to a pit that serves as a mass grave for dead animals at the Berryville Animal Control Shelter.  For the next week or so, the Hatfields claim they contacted Stubbs repeatedly to inquire if he had located their missing dogs, but Stubbs failed to give them any information.

In the Motion for Summary Judgment now pending before the Court, Defendants argue that all claims, including three state-law causes of action and two federal causes of action, should be dismissed against Stubbs and his employer, the City of Berryville.  The

2

state-law claims include conversion of property, inverse condemnation, and outrage, due to the manner in which Stubbs allegedly killed and disposed of the bodies of Egon and Fritz.  The federal claims are made pursuant to § 1983[1] for violations of the Hatfields' due process rights connected with the "taking" of their dogs by the City of Berryville, by and through Stubbs.  The Hatfields further assert that the City of Berryville failed to properly train its Animal Control officers in handling, catching, and impounding dogs and established a custom or policy of selectively enforcing certain city ordinances regarding animal control in favor of other city ordinances.

While this case was pending in state court, the parties exchanged written discovery and took a number of depositions.  Several excerpts of these depositions have been provided to the Court as exhibits to the Motion for Summary Judgment.  In reviewing these materials, the Court must now decide whether to grant or deny summary judgment on all claims, considering the pleadings, evidence supporting the Motion, and the Hatfields' failure to provide any answering proof.

---

[1] They also bring these same claims in parallel under the Arkansas Civil Rights Act ("ACRA"), which provides a cause of action for damages for the deprivation of any rights secured by the Arkansas Constitution by any person acting under color of state law.  The statute provides that "a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act of 1871, as amended and codified in 42 U.S.C. §1983 . . . ." Ark. Code Ann. § 16-123-105.  The Hatfields have not rebutted Defendants' contention that the protection afforded by the ACRA is either broader or narrower than that provided by § 1983.  Because the Hatfields have not explained why their ACRA claims justify separate analysis, the Court's decisions as to the § 1983 claims will apply to the ACRA claims.  *See Hess v. Ables*, 714 F.3d 1048, 1053 (8th Cir. 2013) (affirming district court dismissal of ACRA claims alongside § 1983 claims under same circumstances).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts.  *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998).

In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In response, "[t]he nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial."  *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In the case of a plaintiff's failure to respond to a motion for summary judgment, the reviewing court must still address the merits of that motion and not rule automatically in the defendant's favor.  *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005), *cert. denied*, 549 U.S. 865 (2006); *United States v. One Parcel of Real Prop.*, 27 F.3d 327, 329 n. 1 (8th Cir. 1994); *Canada*, 135 F.3d at 1213 ("When a motion would be dispositive of the merits

of the cause if granted, courts should normally not treat a failure to respond to the motion as conclusive.").

## III.  DISCUSSION

### A.  Federal Claims

The parties agree that on the morning of March 11, 2013, the Hatfields' two valuable German Shepherds were running at large and were not wearing collars or other means of external identification.  The dogs roamed onto the property of the Hatfields' neighbor, Farmer, and entered his goat pen.  At some point, Farmer called Animal Control, and Stubbs responded.  Before Stubbs arrived, however, Farmer shot at the dogs and admitted to Stubbs that he did so.  Farmer admitted that he shot both dogs because they were attacking his goats.  (Doc. 5, p. 14).

The evidence is undisputed that Farmer, not Stubbs, killed Egon.  The Hatfields concede as much in their Amended Complaint.  However, they maintain that Stubbs shot and killed Fritz without provocation and without first attempting to obtain assistance in catching him.  Those allegations are countered by the unrebutted deposition of Farmer, which makes clear that by the time Stubbs arrived on the scene, Farmer had already shot Fritz, and the dog appeared to be both "crippled" and in pain.  *Id.* at p. 16.  Farmer also testified that Fritz was baring its teeth and snarling.  *Id.*  Stubbs confirmed in his deposition that Fritz "appeared to be vicious, it growled and snarled."  *Id.* at pp. 25,15.

Considering the deposition testimony of Farmer and Stubbs, which the Hatfields failed to counter, the Court finds that no violations of state or federal laws or ordinances occurred in this case.  Ark. Code Ann. § 14-52-1102 states that "[m]unicipal corporations

shall have the power to prevent the running at large of dogs, and injuries and annoyances therefrom, and to authorize the destruction of them when at large, contrary to any prohibition to that effect."   The Hatfields' dogs were admittedly running at large, and according to Farmer and Stubbs, were attacking Farmer's goats.  Neither dog was wearing a collar.  Under these circumstances, Stubbs in his individual capacity as a City of Berryville Animal Control Officer did not violate any law.  In the absence of an underlying act of wrongdoing by Stubbs or the City of Berryville, the Hatfields cannot maintain a §1983 action against Stubbs for violations of their constitutional rights.

Any official-capacity claims against Stubbs must also fail, as "[a] suit against a public employee in his or her official capacity is merely a suit against the public employer," *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999), and the City of Berryville cannot be held liable under § 1983 through a *respondeat superior* theory of liability.  *Kuha v. City of Minnetonka*, 365 F.3d 590, 593 (8th Cir. 2003).

The Court also rejects the Hatfields' contention that the City of Berryville failed to train its Animal Control officers in handling, catching, and impounding dogs and established a custom or policy of selectively enforcing certain animal control-related ordinances.  As the Hatfields failed to establish a genuine dispute of material fact as to the violation of any state, federal, or local law in this case, their claims against the City of Berryville must be dismissed, as such claims are predicated on a showing of wrongdoing by Stubbs, which, as previously explained, did not occur here.

## B.  State Law Claims

The state-law causes of action for conversion of property, inverse condemnation, and outrage are also dismissed as a matter of law.  Conversion is defined as "a distinct act of dominion over the property of another which is inconsistent with the owner's rights." *Buck v. Gillham*, 80 Ark. App. 375, 379 (Ark. Ct. App. 2003).  The inverse condemnation statute cited by the Hatfields in the Complaint refers to an owner's right to bring an action for damages for personal property taken contrary to law.  Ark. Code Ann. § 18-15-102.  As explained above, the Hatfields' dogs were running at large and were not wearing collars. They were in Farmer's goat pen chasing goats, snarling, and appearing vicious.  According to state law, the City of Berryville through its Animal Control officer possessed the lawful authority to destroy the dogs in order to prevent the occurrence of "injuries and annoyances therefrom."  Ark. Code Ann. § 14-52-1102.  Putting aside the fact that it was Farmer—not Stubbs—who killed one of the dogs and likely fatally wounded the other, neither Stubbs nor the City of Berryville is liable to the Hatfields for the unlawful taking or conversion of their property.  It also goes without saying that the tort of outrage, which involves conduct that is characterized as extreme, outrageous, and beyond all possible bounds of decency, has not been established as a matter of law.  *See Crockett v. Essex*, 341 Ark. 558, 563 (2000).

## IV.  CONCLUSION

In light of the above analysis, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 5) is **GRANTED**, and all claims in this case are **DISMISSED WITH PREJUDICE**.  Judgment will enter concurrently with this Opinion and Order.

**IT IS SO ORDERED** this _27th_ day of October, 2014.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

8